### BETESH et al. v. FIRE ASS'N OF PHILADELPHIA.

United States District Court
S. D. New York.
Feb. 28, 1950.

George A. Ferris and Ferris & Adams, all of New York City (Albert Adams, New York City, of counsel), for plaintiffs.

Bigham, Englar, Jones & Houston, New York City (Martin P. Detels and Daniel A. Sullivan, New York City, of counsel), for defendant.

NOONAN, District Judge.

The above entitled action having duly come on to be tried before this court and each of the parties having offered proof in support of his respective pleading, and due deliberation having been had, I hereby find and decide as follows:

### Findings of Fact

1. That at all times hereinafter mentioned European Linen Importing Corporation was a domestic corporation.

2. That on or about May 23, 1945, a certificate of dissolution of the said corporation pursuant to Section 105 of the Stock Corporation Law, McK.Consol.Laws, c. 59, was duly filed with the Secretary of State, and that Isaac Shalom and Isaac Betesh were appointed liquidating directors of the aforementioned corporation.

3. That at all times hereinafter mentioned the plaintiffs were and still are citizens of the State of New York.

4. That the defendant is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and the defendant is duly licensed to do business in New York State and is doing business in the City and State of New York.

5. That the amount involved in this controversy exceeds the sum of Three Thousand ($3,000) Dollars, exclusive of interest and costs.

6. That on June 19, 1940, defendant issued its marine policy of insurance No. O.P. 708, whereby, in consideration of certain premiums agreed to be paid, it agreed to insure certain classes of shipments of merchandise made by European Linen Importing Corporation:

"Against all risks of physical loss of or damage to the property insured from any external cause whatsoever, irrespective of percentage, excluding, nevertheless, all risks of loss or damage excluded by the F. C. & S. Warranty or the Strikes, Riots and Civil Commotions Warranty and excluding all claims for loss or damage caused by delay, deterioration or loss of market.

"The risks of War and Strikes and Riots are covered only to the extent that they may be covered under the War, Strikes and Riots clauses endorsed hereon."

This marine policy contained the following F. C. & S. (Free of Capture & Seizure) Warranty: "Warranted free from capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or of any attempt thereat, whether in time of peace or war and whether lawful or otherwise; also warranted free from all consequences of hostilities or warlike operations (whether there be a declaration of War or not), piracy, civil war, revolution, rebellion, or insurrection, or civil strife arising therefrom."

7. That on June 19, 1940, defendant issued its war risk policy of insurance No. O.P.W. 708, which contained the following clause: "1. This insurance is only against the risks of capture, seizure, destruction or damage by men of war, piracy, takings at sea, arrests, restraints and detainments and other warlike operations and acts of kings, princes and peoples in prosecution of hostilities or in the application of

sanctions under international agreements, whether before or after declaration of war and whether by a belligerent or otherwise, including factions engaged in civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, and including the risks of aerial bombardment, floating or stationary mines and stray or derelict torpedoes; but excluding claims for delay, deterioration and/or loss of market, and warranted not to abandon (on any ground other than physical damage to ship or cargo) until after condemnation of the property insured. Also warranted not to abandon in case of blockade, and free from any claims for loss or expense in consequence of blockade or of any attempt to evade blockade; but in the event of blockade, to be at liberty to proceed to an open port and there end the voyage."

8. That clause 2 of the war risk policy contains the following Frustration Clause: "2. Warranted free from any claim based upon loss of, or frustration of, the insured voyage or adventure caused by arrests, restraints or detainments."

9. That clause 4(c) of the war risk policy provides that the insurance shall not attach to the interest insured thereunder at a port or place of transhipment to another overseas vessel after expiry of fifteen days (counting from midnight of the day on which the overseas vessel entering with interest is safely anchored or moored).

10. That in the fall of 1941, Isaac Betesh, an officer of the European Linen Importing Corporation, ordered merchandise from Raymond J. Beyda of Shanghai, China.

11. That Raymond J. Beyda, on November 21, 1941, initiated shipment of this merchandise, i. e., four cases of Linen embroidered goods, by having same placed on board the S. S. Pakhoi at Shanghai.

12. That the goods were shipped on the Pakhoi from Shanghai to Hong Kong where they were to be transhipped to the Tamesis and/or other ship or ships of the Barber-Wilhemsen Line and/or other shipping lines.

13. That the Pakhoi sailed with the said merchandise on board, from Shanghai, China, on November 20, 1941 and arrived at Hong Kong on November 24, 1941.

14. That the Pakhoi completed discharge of her cargo on November 26, 1941.

15. That all cargo from the Pakhoi upon being discharged therefrom was placed in godowns or warehouses in Hong Kong.

16. That the Tamesis sailed from Hong Kong without cargo on December 1, 1941.

17. That the fifteen day transhipment period referred to in the said policy of insurance expired at midnight on December 9, 1941.

18. That the attack against Hong Kong by the Japanese was started on December 8, 1941, Hong Kong time.

19. That the Japanese forces did not land on the island of Hong Kong until December 18, 1941.

20. That the island of Hong Kong was not surrendered to the Japanese until December 25, 1941 and they did not complete occupation until December 26, 1941.

21. That there is no evidence that the insured goods were physically lost or damaged before midnight of December 9, 1941, or at any time before Hong Kong surrendered to the Japanese on December 25, 1941.

22. The only evidence of the physical loss of or damage to the goods by war risks was that they were seized by the Japanese when they captured Hong Kong on December 25, 1941, and not before that date.

### Conclusions of Law

1. Hong Kong was a port of transhipment for the insured within the meaning of clause 4(c) of the War Risk policy O.P.W. 708.

2. The war risk policy insured the shipment against war risks at Hong Kong only for the period of fifteen days after November 24, 1941, which was the arrival date of the S. S. Pakhoi at Hong Kong.

3. The plaintiffs have not proved that the goods insured were lost by any peril covered by the war risk policy, before midnight of December 9, 1941.

4. The war risk policy insured against capture but did not insure against fear of capture.

5. Under the terms and conditions of the Bill of Lading the carrier was not limited to transhipment on the Tamesis and could forward it on any vessel of its line or a vessel of another line.

6. The proximate cause of the loss of the insured goods was the invasion of the island of Hong Kong on December 18, 1941, followed by the subsequent capture of Hong Kong on December 25, 1941.

7. Plaintiffs' alleged loss is not covered by the marine policy.

8. The plaintiffs have not proved any loss recoverable under the insurance policies issued by defendant.

9. The defendant is entitled to judgment against the plaintiffs, dismissing the complaint herein on the merits, with costs to be taxed by the Clerk.

10. Let the clerk enter judgment accordingly.